Dexter J. Evans, on behalf of the Adelie, is Kimberly Ross. All right, to Mr. Evans. May it please the court, counsel. My name is Dexter J. Evans, on behalf of the plaintiff appellate, and this case involves the interpretation of the natural accumulation rule in Illinois, as well as an interpretation of the motion for summary judgment pursuant to Illinois Supreme Court Rule 191A. Not to go into the facts too much, because I know your honors have gotten the briefs, but this involves a gentleman, the plaintiff, that allegedly slipped and fell at a defendant's parking lot, allegedly slipped on ice, and the question becomes, was that ice unnatural, and the plaintiff alleged sufficient facts that granting the motion for summary judgment was in error. Before we even get to whether or not the ice naturally accumulated, did he ever prove for the purpose of the motion that he actually fell on ice, or did he just say he fell in the area and nobody really could say it was ice that he had slipped on? I think it was my understanding, your honors, from the evidence that Mr. Diaz believed after the fact that he fell on ice, but I also believe that when he was found, there was ice in that area as well. In the area. Correct. So there's two issues in this case. One, did the trial court err in completely striking the affidavit of Plaintiff's wife, April Diaz, because it contained some statements that the court determined were inadmissible, where most of the rest of the affidavit contained statements that were within her personal observation and knowledge? Let's start with this first question. Do you, standing here today, concede that maybe some of the statements were inappropriate for an affidavit? Yes, your honor. I would say that there's probably three that were questionable. I would say paragraphs 3, 4, and 19 where people were telling her things that's hearsay, although I would argue that possibly it's not being offered for the truth of the matter asserted, but rather why she went out to a particular area and why she looked and observed in that particular area. And notwithstanding that particular concern, I mean, the issue boils down to on the affidavit whether the court should strike and disallow and not consider the entire affidavit, or does the case law allow the judge to strike the tainted or offending portions and still consider the other allegations, correct? Yes, your honor. You are correct. Under Murphy v. Erzo, Illinois Supreme Court has stated that you're not supposed to, and I'm not particularly fond of this cliché, but I'll use it because I think it's appropriate here, but you're not supposed to throw the baby out with the bathwater. You can strike the offending portions of the affidavit, but you shouldn't throw out the good with the bad, and the court did that in this case. I don't think there's any argument that the court did that in this case, and I think the defendant even concedes in their brief that they weren't arguing about every one of the paragraphs, just certain ones that related to hearsay statements. And so what is, what's the basis for striking the entire affidavit? Is it, I mean, did the court say it's because these three, four, whatever the court determined to be not appropriate, taint the rest of the information? Why did the court do that? Your honor, I'm not exactly sure as I stand here today why the court threw out the entire affidavit. We made these same arguments in front of the trial court and in front of his honor, and it's still my assumption, and the order's not very clear on this issue either, but it's still my belief that the court threw it out because it contained some hearsay in the affidavit, and he felt that he had to throw out the entire affidavit. Even if the reasons are not clear, clearly he struck the entire affidavit. Correct. Correct. The complete affidavit, according to the last order, was completely stricken. Mr. Evans, if we find that, if we parse through and determine there are some portions of the affidavit that should be stricken and some that shouldn't be stricken, do you believe that we should then make the determination with respect to whether or not the summary judgment motion was appropriate? Or should we remand it and have the court review and go back and review the affidavit pursuant to 191A and strike only that which they believe is hearsay and then make that determination? That's a long, convoluted question, but I guess the question is should we do the work or should we send it back to the trial court? No, I understood, Your Honor. And I would suggest that I think it is appropriate for Your Honors to determine whether there was a natural accumulation or unnatural accumulation based upon the fact that the courts in that last order that's being appealed, the trial court also indicated that plaintiff did not prove an unreasonably dangerous slope. The fact of the matter is plaintiff never alleged an unreasonably dangerous slope. And that's not required in an unnatural accumulation case. There are a plethora of cases that I've cited in my brief from this court and other districts in Illinois which indicate that you can survive an unnatural accumulation case with either a, you can allege an unreasonably dangerous slope and you can prove it usually by an expert. Or you can allege a negligent plowing case, which we did in this case, which our complaint actually has contained that we said that the defendant plowed snow to snow piles and that the snow melted and there was freezeback. So what you're saying in that situation or in the situation that you have here certainly is a question of that for the dryer effect. Correct. And so once you, once the affidavit is restored and at least the portion that shouldn't have been stricken, if the court, if this, if your Honor to determine that a few of the paragraphs should have been stricken that related to hearsay, when you look at the affidavit, then you have to ask, well, does that create a question of fact in conjunction with the other evidence, the other testimony? And I think that it does. Under Illinois law. I think you must have misspoke before because you said then you could determine, you should determine whether or not there was a natural accumulation. We're not going to determine toward the trial court. It's more so. Are we going to determine? Is that issue a question of fact for the trial? Correct. If I said that, I didn't speak that. It's obviously under the motion for summary judgment standard that whether there's a question of fact, whether there are material issues of we don't find the fact that that could determine whether there is an issue. Correct. And so in looking at case law negligent filing cases, the question is, can the plaintiff, the plaintiff has to show that there is a nexus, essentially called the essential nexus between the snow pile and the ice that claimant falls on. And in looking at the affidavit of Miss Diaz and looking at it in conjunction with the other testimony, I believe that there are questions of material fact, which I'd like to go over right now. First, defendant's employee, Gerardo Navarez, testified that they would plow the parking lot in the area where plaintiff fell and that because of the plowing process, some residual snow would be left over up against the west face of the building. This would require them to shovel the snow back out into the middle of the parking lot. So that's that's uncontroversial. He did state that. He might not have used the exact word pile, but he did state that snow would be left there on the west face of the building. April Diaz in her affidavit says that when she got to the property of defendant, she noticed snow that was piled up against the west face of the building, which is consistent with where Mr. Navarez testified that the snow would be piled up. We know that Mr. Diaz slipped and felonized. We also know just from the type of injury he had and from his testimony that he didn't move himself. And even defendant's employees said there was no way he was going to be able to move himself. He was obviously hurt. There is some question as to Mr. Diaz saying that he got moved 20 to 30 feet by defendant's employees. I would chalk that up to a gentleman that had a severe fracture in his ankle. He's obviously in a state of shock. He slipped and felonized. Anybody, even if they don't have that, is going to be in a state of shock. He had severe injury. It's clear that he's not exactly sure what exactly happened at that point. But defendant's employees are adamant that when they came out there, they did not move him 20 to 30 feet. They simply moved him, propped him up into a chair. But isn't the real, I think if you look at facts and then you look at the trial court's order, the trial court is pinning a lot of this on your client's, I guess, deposition testimony where he goes from 20 to 30 to I don't know to 3 to 4 and I don't know. I mean, that's going to be, that alone does not create a legitimate question of fact. But it does create some concern, possibly, about the actual cause of the injury. Yeah, I would agree with Your Honor that in reading Mr. Diaz's deposition, he was not very clear on a lot of things. And he was never adamant about anything. A lot of the responses he was giving, when you look at the deposition, it seems like he was feeling pressured into giving certain answers or what have you. But aside from that, even if the question is whether his credibility is at issue, credibility determinations are not for the trial court, they're for the trier of facts, so for the jury. What is your best evidence? How do we, what evidence establishes to create this material issue of fact that he, the point where he slipped, again, with these discrepancies, he fell on quote-unquote unnatural accumulation of facts? I think the facts, the strongest facts, Your Honor, that would indicate that are the testimony, like I said, of Mr. Navarez that said that the snow would be locked during plowing cycles. Ms. Diaz stating in her, and I'll mention that you did disclose her as a 213F occurrence witness and defendant chose not to pose her, so that's why we submitted an affidavit in response to the motion for sermon judgment. But Ms. Diaz testified that she personally observed snow in those areas where Navarez testified that he, that they would be locked. We know Mr. Diaz fell on ice. We know that he couldn't move himself. We know that defendant's employees didn't carry him 20 to 30 feet but simply propped him up into the chair. So when Ms. Diaz gets there, observes the snow pile, observes Mr. Diaz in an area where he had fallen because they just simply picked him up, then she testifies in her affidavit that she traced the ice from that snow pile to the area in the parking lot by the parking spaces where Mr. Diaz was. So does this case standard fall on Mr. Diaz? No, not intended. Because, is he really specific about, isn't the issue he's not really sure where he fell because of all of the discrepancies he's given conflicting versions? So unless, isn't it incumbent on the plaintiff to prove where he fell? That's very, that's absolutely true, Your Honor. I think that he's given some testimony that can be part of a larger picture encastered with other facts and inferences from the testimony of defendant's employees and from also his wife. This is one part of the link you're saying. He doesn't have to be definitive? Correct. That would be my argument in the case law. Let's face it. If Mr. Diaz had not been present there, it would be very, very difficult to try to argue there's a question of fact because of the discrepancies. And obviously he didn't ever testify that he traced the snow to a snow pile. He didn't have an opportunity to do that. He was severely injured. So, but when you have a witness who's actually there and there's no evidence that Mr. Diaz was moved away from the area where he fell, then I do believe it creates a question of fact. And when you look at all those facts that I talk about in concert in the light most favorable to us, which the law requires, then there are questions of a material fact. The witness that saw where he, there was a witness who came out and saw where he fell? There were two employees. It was, I think it was Elazar Carbajal and Gerardo Navarez that came out there. They saw him. It was obvious that he was. Was he still there? He was still there. And was he in the same spot where he allegedly fell? Well, I don't think that question was ever asked of Mr. Diaz, whether he moved from the area. He testified that the gentleman picked him up and moved him 20, 30 feet. They said, absolutely not. We did not do that. We did not move him. All we did was prop him up into a chair. So was this area, in other words, where he was ultimately seen by this witness you alluded to, that witness says on that spot there was an actual accumulation? She traced back to something? Is that what you're telling me? Correct. His wife, April Diaz, came to the scene. She observed the snow pile, and she testified in her affidavit that she saw the ice emanate from the snow pile to the area where her husband was sitting. Area or where he was? She can't obviously say that that's where he fell because she didn't observe it. But when you have a proximate cause, don't you have to have you can't have proximate cause based on surmise or conjecture. You have to have, say, ice slipped on the ice, correct? He never said he slipped on the ice. He didn't know. In the deposition testimony, he never really came clear and said what he felt. Isn't that true? I think that is true, Your Honor. Your Honor, what I would say is that you can also base your case, even proximate cause, on circumstantial evidence. And he was found in an area of the ice. There was a plethora of testimony that said the parking lot was icy. That even gets into more credibility issues because defense employees were saying that there was no ice whatsoever in the parking lot, whereas the EMS employees were saying that or the EMS personnel were saying that there was a lot of ice, and they ought to be careful themselves. So when you look at all of these facts and all the testimony, it's a perfect case for a jury because there are so many credibility questions. There's so many questions of fact that just have not been determined. And at this point in proceeding summary judgment, you submit that in light of the fact that the facts have to be weighed in your favor, that it's more probably true than not that something is faked. Correct. Correct. I think if you – can I finish my thought? Yes, finish up. If you look at all of the evidence in the light most favorable to the plaintiff, and you assume all of the facts that are allowed in Ms. Diaz's affidavit to be true and all the other testimony in conjunction with that, and all the inferences, then ultimately there are questions of material fact as to whether that ice was unnatural. And that's what we have to show. That's how we get past that stage. You first have to show that he fell on ice. Correct. Correct. He testified he slipped and fell. He's found where there's – in the area where there's a lot of ice. There's other testimony that backs that up. So I think that's circumstantial evidence of where he – or that he fell on ice. Did anybody at the deposition ask him, what did you fall on? I don't recall, Your Honor. I'm sorry. Okay. All right. You'll have an opportunity for rebuttal if you wish to do so, and as soon as you're cleared up. Thanks. Ms. Ross, you may proceed. Thank you. May it please the Court, Counsel, my name is Kimberly Ross. I represent Ann Costile. I will actually, rather than go with my prepared remarks, I will answer Your Honor's last question. Yes, somebody, meaning me, did ask Mr. Diaz what he fell on at his deposition. The answer was, in fact, ice. However, in no uncertain terms, he testified clearly that that ice was 20 or 30 feet south of where he parked his car, 20 to 30 feet south of where Mrs. Diaz claims she observed a pile of snow. There was no wavering. There was no I don't know. There was no on the back and forth with the three to four feet versus those who are not. Those were wavering on other distances. He wavered on a distance when I asked him how far he was from the door where he exited to where he fell. He said he didn't know. I wasn't thinking about it. I don't know. But when it came down to asking him where he was in relation to his truck, he testified in no uncertain terms that it was 20 or 30 feet south of where he was eventually carried. He not only said it in words, but he described it point by point in the photos using landmarks of photographs that had been taken. And he was very specific about how he was carried 20 to 30 feet. But isn't that an issue that goes to credibility, which would not necessarily be a summary judgment issue? Not at all, Your Honor. The reason it doesn't go to credibility is because the plaintiff, when we file a motion, when a defendant files a motion for summary judgment, we're required to take the plaintiff's testimony as it is. We can't ignore any part of it. We have to take it. And if there's something there that creates a question, it creates a question. But what's happening here is that the plaintiff is asking you to ignore his bad testimony, to ignore his testimony that he fell 20 or 30 feet away from the condition that his wife allegedly saw, and instead only consider his good testimony. Counsel, is there any question that the trial court did not consider the evidence or any part at all? I'm sorry. The trial court struck the affidavit. The trial court did not consider in ruling on the motion any of the allegations of the affidavit. No, I don't believe, Judge, that's what happened. You had asked counsel for plaintiff why did the judge strike the whole affidavit. I can't, of course, get into the judge's mind on exactly why he threw it out. However, at the argument in September, where unfortunately there was not a court reporter present, we argued in detail all of the various points of the affidavit that we felt were either hearsay or, and there was other problems, that some of them were conclusory. We didn't, as counsel pointed out, I admit, we did not argue that we didn't even ask for the court to strike the entire affidavit. We only asked the court to strike certain portions. So wasn't the court incorrect in striking the entire affidavit based on 191? Yes, but there's obviously a caveat to that admission. There were certain paragraphs in the affidavit that ultimately the court didn't have to strike, that she's, that Mrs. Diaz is, Mr. Diaz's wife, things like that. But all of the allegations, all of the statements about her observations about Slope, her observations about where her husband allegedly fell, those paragraphs should absolutely have been stricken. Some of them were, although based on her personal knowledge, entirely irrelevant. And so what I believe happened was that the court, rather than going out and parsing, I'm going to dismiss, I'm going to strike these 17 paragraphs and leave these three in. He struck the entire affidavit, but he most certainly did consider the entire affidavit. How do we know that? And doesn't that bring us into the realm of speculation, which is part of your argument that the plaintiff's claim is speculative? How do we really know what the trial judge did and did not consider in ruling on the point? Based on the comments that he made. However, let me get to the however part. But we have to look at his order, not his comments, because we don't have any. But if you allow me to get to the however part of this argument, it is our position that even if we do accept all of the statements in April Diaz's affidavits that were not based on hearsay and were not conclusory. And also for the purpose of this, we'll assume that those all exist. Despite the fact that she was the only one who saw this alleged condition, her testimony still does not create a question of fact. Who decides that? Yes, who decides that? Should we, as I asked your opponent, should we decide that? Should we remand the fact to the trial court and say you made a mistake in striking everything? The answer is that you can decide that. And that's been our argument all along. That was our argument in our reply brief in the original motion. It was our argument in response to the motion to reconsider. It's been our argument in this brief. That it doesn't, even if, we argue that the judge's decision was right because the allegations, certain ones were hearsay and conclusory and the rest were irrelevant. And the point is that even if you consider the allegations in the affidavit that were not conclusory or hearsay, in fact, there's still no question of fact. What we're left with is an alleged pile of snow against the building with a trail of ice leading from it. But again, as I stated at the beginning, which is not where I intended to state it, but I did it already. We have plaintiff testifying in no uncertain terms that he absolutely did not fall in the spot where she said she observed that condition. And again, what counsel has now raised is this argument that Mr. Diaz was in so much pain that the court can't believe his testimony and should only consider that of ANCO's employees who weren't in pain about where he fell. He can't, plaintiff cannot have it both ways. Either we ignore all of his testimony because he was in pain at the time, in which case the suit needs to be dismissed because he would never sustain his burden. Or we have to consider all of it, which is, in which case summary judgment is appropriate. In summary judgment, in addition to taking into account his testimony, you take into account the deposition testimony of the emergency people, the people from ANCO, the wife's affidavit, correct? Well, the emergency people, fine. They don't know where he fell. They only came upon him on a chair, and they could say what was in the immediate area of where they were traversing. But they didn't, none of them said, none of them knew how long the ice had been there, where it came from, how it got there, etc. The ANCO employees said that there was no trail of ice. They said there was no pile of snow. And again, you can take the statements of the wife that are not hearsay and not conclusory and still grant summary judgment. Mr. Diaz is now claiming that he was in so much pain that you can't believe the bits of testimony where he said in no uncertain terms he fell 20 or 30 feet south of where Mrs. Diaz said she observed the condition. It would be one thing if the plaintiff was saying he fell where Mrs. Diaz observed the condition, and ANCO's employees were saying, no, no, he fell 20 or 30 feet away, and we carried him over there. That, I would concede, might create a question of fact. But we have to take the plaintiff's testimony for what it is. Just we cannot pick and choose. The court cannot pick and choose. No more than I could ask you to ignore some of the plaintiff's testimony because it was incredible. The plaintiff can't do that either. He doesn't get to pick and choose what testimony we're going to listen to and what we're going to- But apparently the trial judge did pick and choose, and the trial judge decided, well, he-I mean, let's look at the order. If this 20 to 30 feet is causing the problem, that's what the trial court relied on because everybody else who was-nobody saw him fall, but everybody else who was there before he was taken away, the two witnesses from ANCO, the two of the three EMTs all said there was ice in that location, and they even-well, the two witnesses said from ANCO, we couldn't lift him because he was too big, so this is where he stayed. And then the witnesses who came in after that, the EMT said there was ice in that area, and they also had to be careful. Okay. Well, first, the two employees said that there was no ice in the area that they found him, but they did not witness the accident. They cannot say where he fell. He might have crawled a few feet. He might have slid, but it's all speculation. They don't know, and I would-they would never be allowed to testify where he fell, no more than April Diaz can testify as to where the plaintiff fell. The only person who can testify as to where the plaintiff fell in the absence of an eyewitness is the plaintiff, and in no uncertain terms, without wavering, without saying I was in too much pain to know, he said I fell 20 or 30 feet south. I was-he pointed it out on the photographs, and it was clear that where it was, that it was nowhere near where his truck was, and that he was moved over there. And that's the testimony- But they said they didn't move him. But it's the plaintiff's testimony, but they don't know. They did move him. They put a chair next to the truck, and then they moved him to the chair. But- They didn't move him 20 feet. But they don't know where he fell. They can't-you cannot use the testimony of non-eyewitnesses to say-to speculate that he did, in fact, fall where he-where they found him. They can't do that. They would be disallowed from the court. He-you have to consider admissible testimony in order to do that. They will not be allowed to testify where he fell because they didn't see it. The paramedics only could say that where they were generally attending to them, there was- But they could testify where they found him. There's no dispute about that. They can testify to where they found him, but they can never link up where they found him to where he fell. Why can't there be some inferences, though? Because the only inference that can be raised is the plaintiff's testimony that he didn't fall there. The only-you can't infer that they felt that he must have fallen there because that's where they found him when his own testimony contradicts that and says he fell 20 or 30 feet away. That's why. Yeah, he doesn't explain how he ended up 20 or 30 feet away or where he fell. He doesn't-well, he was on his way out of the building. Right. And so it's-it was from the building to where his truck was. It was on the way. He was- How did he move 20 or 30 feet from the spot that he fell? According to his testimony, again, in no uncertain terms, these two guys helped him over there. No, he said he fainted when-well, after. They were lifting me, and I asked them to take me to the truck, and then when we were getting there is when I fainted, and then when I woke up, I asked them to call an ambulance. He fainted. On the way. But he- But that doesn't take away from the fact that he knew he was nowhere near his car. You're saying he might have been moved feet, 10 feet, 15 feet from there. However many it was, he-according to his testimony, he was moved. And, therefore, that breaks the causal nexus between the alleged condition that Mrs. Diaz saw and what he allegedly fell on. And that's the key to all these cases. They talk about the causal nexus. There is a case that was cited, the Medeo case, which actually the plaintiff cited, and we cited it as well, and it's important to note the language of that case. That was a case also where there was a snow pile that was placed at the high point of a sloped lot. The snow melted, water flowed to the drain, and the plaintiff claimed that that's the ice that she slipped on was from the melt. And the-and she, you know, produced some speculation that that's what she must have fallen on. And what-and this court upheld the decision and-and said that while it was, quote, possible that she did, in fact, slip on the ice that had melted and refroze from the pile that was plowed at the perimeter of the parking lot, there was no, quote, concrete evidence linking that pile that caused her to slip, and, therefore, summary judgment was allowed. The-the-here, all we have is-is a-is a speculation and an attempt to discard the plaintiff's testimony in order to conjure up some evidence that what he slipped on, the only-and the condition was-was what his wife allegedly observed. No, I-I appreciate the Hitchin Post case. I think it's Wigeland v. Hitchin Post. I was looking at the bill, and it says that you can't-you-you can't have-proximate cause can't be predicated on a surmise or conjecture. And if somebody falls and says, oh, I caught my heel in carpeting, which there are several of those cases, and I went down the jeep. Or I think I-I-I don't-I fell, but I think it was that hole in the carpeting, you can't surmise that. If you have somebody who slipped on something, fell, and passed out, you can't rely on their testimony because they're not going to be able to give you testimony, correct? So, in that case, then, summary judgment is granted? That's not correct. Actually, both the facts and the conclusion are not correct. The facts here are that the plaintiff did not- No, the facts here aren't. Those are not the facts here. I'm saying if you have those facts in a slip-and-fall case where the defendant or the plaintiff cannot give you the testimony as to what he slipped on or she slipped on because they slipped and passed out, then is summary judgment granted? If you don't have the testimony. If there isn't any other outside evidence, like a witness or as some of these slip-and-fall liquid cases, like her footprint in the-and liquid on the bottom of her shoe, those types of things, that can be circumstantial. But we don't have that. Number one, we don't have a plaintiff who fainted until sometime after he fell. Further, he didn't testify that I fainted, therefore, I can't answer your question. He answered the question, and that was not a question he struggled with. He came right out and said, I fell 20 to 30 feet-it's not even 22. It's 20, 30 feet, 20 or 30 feet south of my trunk. And he didn't waver. And it wasn't until after he was on his way to being dragged over that he claims that he fainted. I have no further questions. You may summarize, if you would. Justice, sorry. The fact is, is that the plaintiff has had ample opportunity here to present any question of fact that there was an unnatural accumulation that he slipped on. The testimony, there were two affidavits. They were replete with hearsay and conclusions. And, therefore, it's our belief that the trial court properly struck the affidavit, even if certain sections of it were not relevant, were not specifically hearsay or conclusions. They were not relevant to the decision on the summary judgment. And that the trial court made the proper decision on summary judgment and the proper decision on motion to reconsider. And that Your Honors can most certainly consider this entire case, including the summary judgment, even if you consider the non-hearsay and non-conclusory allegations in the affidavit of April Diaz. Thank you. Thank you. Mr. Evans. Going back to the affidavit, Your Honors, there was some question about whether or not the court considered it. If you look at the order from September 14, 2012, the court specifically stated in paragraph one of the order that the court says that the affidavit should be stricken and not considered in response to the motion for summary judgment. I don't think it can be any more clear if the court didn't consider it in ruling upon the motion. You have a point, but the thrust of her argument appears to be one. Even if you consider all the admissible portions of the affidavit, including his wife April's, nobody really knows, including the plaintiff, where he fell in connection with this incident. Because there is, and I was looking through the record of depositions, he says he got moved, quote unquote. How far he got moved, nobody knows. So her argument is how do you know where this man fell? How does anybody know where he fell? And how do you respond to that? My response, Your Honor, would be that his deposition testimony was, and I think everyone would agree, there was nothing certain about it. And counsel kept speaking of no uncertain terms. But he indicates I agree. He says I got moved 20 or 30 feet. He also mentions that he fainted. But he says, would you concede at least a fair reading of everything is that the other gentlemen were helping, were moving him when he fainted. I mean, he was already being moved. So do we know if he got moved 10 feet or 30 feet? If you look at, Your Honor, if you look at the facts and the legislation laws, there are employees who say that they did not move him, only to prop him up into a chair. So if they didn't move him from that area, he couldn't move himself because of that severe ankle fracture. Then the reasonable inferences that can be drawn for purposes of this motion are that he didn't move. He didn't get moved at all? He didn't move. He got propped into a chair. And that's, and I, the law has those safety nets for plaintiffs because there are times where plaintiffs will. Plaintiff could fall and get knocked out and condemn you for anything, you're saying. Right, right. But in this case, fortunately, the employees came out there, but they in all uncertain terms say that they did not move him. Absolutely not. He was too big. And he did not move himself. I mean, there is no testimony that he moved himself. So he's obviously confused. They want to pick and choose what they're, you know, what Mr. Diaz is saying, but they're also ignoring what their own employees are saying. So we've got so many questions in this case. We have questions about whether there was ice there, whether there was no ice in the entire parking lot. It screams credibility determinations, which are for the prior fact. But as definite as the employees of ANCO were that they did not move him because of his size, and in fact his cousin ran back in to get a chair because there wasn't any place to put him, they also were very clear that there was no ice in that area. So how do we deal with that? The only true independent witnesses in this case I would submit would be the EMS personnel, and two of the three stated unequivocally that there was a lot of ice in that parking lot, and they had to be careful themselves because of the ice. So, again, it goes to credibility. There's so many witnesses in this case. There's so many different versions of what happened, and this is the perfect case for a jury to make that determination, not on a motion for serving judgment where the court clearly and unequivocally did not consider the affidavit at all. So in the final analysis, I would submit that you can have a question of fact that's based upon circumstantial evidence, and that's what we're relying on, obviously, in this case, because I agree the plaintiff can't say this is exactly where I fell and point to it, but there is circumstantial evidence that the area where he was propped up into the chair was where he fell, and looking at those facts in the light most favorable to plaintiff, there is a question of fact as to whether the ice was natural and it should be determined by the trier of fact. Thank you, counsel. We have no additional questions. Thank you for your argument. We will, in fact, take the matter under advisement. We are now going to stand in adjournment, and we will render a decision in your case in due course. Thank you.